Filed:  January 13, 1998

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 95-4018
(CA-92-219-AM)

---

Tony Albert Mackall,

Petitioner - Appellant,

versus

Ronald J. Angelone, etc., et al.,

Respondents - Appellees.

---

O R D E R

---

The Court amends its opinion filed December 18, 1997, as follows:

On page 4, second full paragraph, line 1 -- the phrase "still represented by counsel," is deleted.

On page 5, first paragraph, lines 13 and 14 -- the words "attorneys" "were" are corrected to read "attorney" "was."

On page 7, first paragraph, lines 3 and 4 -- the words "attorneys" "were themselves" are corrected to read "attorney" "was himself."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TONY ALBERT MACKALL,
Petitioner-Appellant,

v.

RONALD J. ANGELONE, Director,
Virginia Department of Corrections;

No. 95-4018

SAMUEL V. PRUETT, Warden,
Mecklenburg State Correctional
Facility; COMMONWEALTH OF
VIRGINIA,
Respondents-Appellees.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-92-219-AM)

Argued: September 30, 1997

Decided: December 18, 1997

Before WILKINSON, Chief Judge, RUSSELL, WIDENER,
MURNAGHAN, WILKINS, NIEMEYER, HAMILTON, LUTTIG,
WILLIAMS, MICHAEL, and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Wilkins wrote the majority
opinion, in which Chief Judge Wilkinson and Judges Russell, Wid-
ener, Niemeyer, Hamilton, Luttig, Williams, Michael, and Motz
joined. Senior Judge Butzner wrote a dissenting opinion, in which
Judge Murnaghan joined.

_____

**COUNSEL**

**ARGUED:** Joseph N. Bowman, Alexandria, Virginia, for Appellant. Donald Richard Curry, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees. **ON BRIEF:** Donald R. Lee, VIRGINIA CAPITAL REPRESENTATION RESOURCE CENTER, Richmond, Virginia, for Appellant. James S. Gilmore, III, Attorney General, Pamela A. Rumpz, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees.

---

**OPINION**

WILKINS, Circuit Judge:

Tony Albert Mackall appeals a decision of the district court denying his petition for a writ of habeas corpus,[1] which challenged his Virginia conviction for capital murder and resulting death sentence. See 28 U.S.C.A. § 2254 (West 1994).[2] Mackall's request for a certificate

---

[1] Mackall named the Commonwealth of Virginia; Edward W. Murray, then Director of the Virginia Department of Corrections; and Charles E. Thompson, then Warden of the Mecklenburg Correctional Facility where Mackall is incarcerated, as Respondents in his petition. Subsequently, Ronald J. Angelone became the Director of the Virginia Department of Corrections and Samuel V. Pruett became Warden at Mecklenburg Correctional Facility. For ease of reference, we refer to Respondents collectively as "the Commonwealth" throughout this opinion.

[2] Because Mackall's petition for a writ of habeas corpus was filed on January 2, 1992, prior to the April 24, 1996 enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub. L. No. 104-132, 110 Stat. 1214, amendments to 28 U.S.C.A. § 2254 effected by § 106 of the AEDPA do not govern our resolution of this appeal. See Lindh v. Murphy, 117 S. Ct. 2059, 2067 (1997). We have not yet decided whether the provisions contained in § 107 of the AEDPA apply to petitioners who filed state habeas proceedings after July 1, 1992. See Bennett v. Angelone, 92 F.3d 1336, 1342 (4th Cir.) (holding that prior to July 1, 1992 Virginia had not satisfied the statutory opt-in requirements and that the provisions of § 107 do not apply to indigent Virginia prisoners seeking federal habeas relief from capital sentences when the Virginia courts

2

of probable cause to appeal is granted because at least one judge on the panel concludes that Mackall "has made a substantial showing of the denial of a constitutional right." 4th Cir. R. 22(a).**3** We conclude that the district court correctly held that Mackall was not entitled to habeas relief.**4**

_____

finally decided their state habeas petition prior to that date; noting that it was undecided whether the procedures established by the Commonwealth for the appointment, compensation, and payment of reasonable litigation expenses and competent counsel satisfied the statutory opt-in requirements after that date), cert. denied, 117 S. Ct. 503 (1996). Mackall's first state habeas proceeding was finally decided by the Virginia courts October 18, 1989; but, his second habeas petition was filed on August 20, 1993 and finally denied on April 12, 1994. We need not consider the applicability of the provisions of § 107 of the AEDPA in light of the procedural morass presented by the facts at hand because we conclude that habeas relief is inappropriate under the more lenient standards in effect prior to the AEDPA amendments. See O'Dell v. Netherland, 95 F.3d 1214, 1255 n.36 (4th Cir. 1996) (en banc), aff'd, 117 S. Ct. 1969 (1997).

**3** There has been no argument concerning whether Mackall should be granted a certificate of probable cause to appeal, as he requested, or a certificate of appealability. We need not address that question here, however, because the certificate would be granted based on the conclusion that Mackall made a substantial showing of the denial of a constitutional right irrespective of which type of certificate technically should be issued under these circumstances. Compare Lozada v. Deeds, 498 U.S. 430, 431-32 (1991) (per curiam) (explaining that to warrant the grant of a certificate of probable cause to appeal, a habeas petitioner must "make a substantial showing of the denial of [a] federal right" and that to satisfy this showing, the petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further" (alterations in original) (internal quotation marks omitted)), with Murphy v. Netherland, 116 F.3d 97, 101 (4th Cir.) (denying certificate of appealability under 28 U.S.C.A. § 2253 (West Supp. 1997) in habeas corpus action seeking relief from death sentence when petitioner failed to make a substantial showing of the denial of a constitutional right), cert. denied, 118 S. Ct. 26 (1997).

**4** A panel of this court earlier held that the decision of the district court should be affirmed in part, reversed in part, and remanded for further proceedings. See Mackall v. Murray, 109 F.3d 957, 964 (4th Cir. 1997). A majority of the judges in active service subsequently voted to consider this appeal en banc, and accordingly, the panel decision was vacated.

3

I.

On the night of December 9, 1986, Mackall robbed a service station in Prince William County, Virginia and murdered the cashier on duty, Mary E. Dahn, by shooting her in the head. Mackall subsequently was convicted of capital murder in the commission of a robbery while armed with a dangerous weapon and was sentenced to death on the basis that he posed "a continuing serious threat to society."[5] Va. Code Ann. § 19.2-264.2 (Michie 1995). The Supreme Court of Virginia affirmed on direct appeal, and the United States Supreme Court denied certiorari. See Mackall v. Commonwealth, 372 S.E.2d 759 (Va. 1988), cert. denied, 492 U.S. 925 (1989).

In March 1989, Mackall filed his first petition for postconviction relief, asserting the following: (1) a pretrial lineup and an in-court identification were unnecessarily suggestive; (2) the trial court improperly refused to permit defense counsel to inquire into the views of the venire on the death penalty; (3) the trial court improperly excluded the mitigating testimony of Patricia Hollingsworth; and (4) trial counsel should have been permitted to withdraw due to a conflict of interest. This petition was neither signed nor verified by Mackall and did not raise any claim of ineffective assistance of counsel. The state habeas court denied the petition, concluding that the first of Mackall's claims was defaulted under Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974) (holding that issues not properly raised at trial and on direct appeal will not be considered on state collateral postconviction review) and that the remaining claims were barred by Hawks v. Cox, 175 S.E.2d 271, 274 (Va. 1970) (precluding, absent changed circumstances, consideration in state habeas proceedings of claims previously considered on their merits). Mackall did not seek review of this ruling.

Acting pro se, Mackall filed this action on January 2, 1992, seeking habeas corpus relief pursuant to 28 U.S.C.A. § 2254. The district court appointed counsel and granted counsel's subsequent request to hold the federal proceedings in abeyance to permit Mackall to exhaust

_____

[5] Mackall was also convicted of robbery and a firearm offense and was sentenced to life and two years imprisonment respectively on those counts.

4

numerous claims that had not been pursued on direct appeal or in his first state habeas petition. Mackall then, for a second time, petitioned the Virginia courts for postconviction relief. Among the claims Mackall advanced in this second state petition were arguments that he received ineffective assistance of counsel during trial and on direct appeal. The state habeas court denied relief, concluding that because Mackall had not raised these claims in his first habeas petition, they were barred pursuant to Va. Code Ann. § 8.01-654(B)(2) (Michie 1992). Mackall petitioned the Supreme Court of Virginia for review, raising five assignments of error: (1) the state habeas court erred in failing to conduct an evidentiary hearing; (2) he possessed a right to effective assistance of counsel in the first forum in which he could raise his federal constitutional claims; (3) the attorney who represented him during his first state habeas proceeding was ineffective, and this ineffectiveness constituted cause for failing to raise the claims that were omitted from the first state habeas petition; (4) the new claims raised in his second state habeas petition were not defaulted because the state habeas court lacked jurisdiction to consider the first petition since that petition was neither signed nor verified; and (5) the new claims raised in his second state habeas petition were not defaulted by his failure to seek appellate review of the denial of the first habeas petition. The Supreme Court of Virginia denied review:

> Applying the mandate of Code § 8.01-654(B)(2) and the rule of <u>Slayton v. Parrigan</u> to the assignments of error Nos. 4 and 5, and finding no merit in the appellant's other assignments of error, the Court refuses the petition for appeal.

J.A. 1762 (citation omitted).

Returning to district court, Mackall pressed numerous claims, including the three that he pursues here--that he received constitutionally ineffective assistance of counsel during trial and on direct appeal in violation of the Sixth Amendment; that the trial court improperly excluded mitigating evidence in violation of the Eighth and Fourteenth Amendments; and that the refusal of the state trial court to permit defense counsel to question the venire concerning their views of the death penalty violated the Sixth and Fourteenth

5

Amendments. The district court rejected each of these claims, and Mackall appeals.

II.

Absent cause and prejudice or a fundamental miscarriage of justice, a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule. See Harris v. Reed, 489 U.S. 255, 262 (1989). The Supreme Court of Virginia expressly relied on the procedural default rule set forth in Va. Code Ann. § 8.01-654(B)(2) in refusing during Mackall's second state habeas corpus proceedings to consider his claims that he received constitutionally ineffective assistance of counsel during trial and on direct appeal.[6] And, we have held on numerous occasions that the procedural default rule set forth in § 8.01-654(B)(2) constitutes an adequate and independent state-law ground for decision. See, e.g., Pope v. Netherland, 113 F.3d 1364, 1372 (4th Cir. 1997), cert. denied, 66 U.S.L.W. 3177 (U.S. Aug. 19, 1997) (No. 97-5343); Gray v. Netherland, 99 F.3d 158, 163 (4th Cir. 1996), cert. denied, 117 S. Ct. 1102 (1997). Accordingly, we may not consider these claims on their merits unless Mackall can demonstrate that cause and prejudice exist to excuse the default or that the failure of the court to consider the claims would amount to a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Mackall maintains that cause and prejudice exist[7] to excuse his fail-

_____

[6] Mackall maintains that his trial counsel erred in failing to challenge witness identifications of him as the murderer, to cross-examine an identifying witness and a jailhouse informant, to point out that an identifying witness had given a statement that the perpetrator wore a mask, and to object to irrelevant testimony, the prosecutor's closing argument, and cross-examination of an expert outside the scope of direct examination.

[7] Mackall does not assert, and has not demonstrated, that a constitutional error probably resulted in the conviction of one who is actually factually innocent. See Schlup v. Delo, 513 U.S. 298, 323-27 (1995). Further, Mackall has not presented "clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty," and thus he has not demonstrated

6

ure to raise the claims that counsel representing him during trial and on direct appeal were constitutionally ineffective. He asserts that the attorney representing him during his first habeas corpus proceeding was himself constitutionally ineffective in failing to raise the earlier ineffectiveness of counsel. In other words, Mackall contends that because he received constitutionally ineffective assistance of counsel during his first state habeas corpus proceeding, this court should excuse his failure to raise the claims of ineffective assistance of trial and appellate counsel and address those claims on their merits.

If attorney error amounts to constitutionally ineffective assistance of counsel under the standard established in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984),[8] the Sixth Amendment dictates that the attorney's error must be imputed to the state. <u>See Coleman</u>, 501 U.S. at 754. Consequently, when attorney error amounts to constitutionally ineffective assistance of counsel, it may provide the cause necessary to excuse a procedural default. <u>See id.</u> at 752-54; <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). In order to constitute constitutionally ineffective assistance of counsel, however, a constitutional right to effective assistance of counsel must first exist. <u>See Coleman</u>, 501 U.S. at 752.[9]

---

that he is "actually innocent of the death penalty." <u>Id.</u> at 323 (emphasis & internal quotation marks omitted). Consequently, Mackall has not established a fundamental miscarriage of justice to excuse his default of these claims.

[8] A defendant is deprived of the assistance of counsel guaranteed by the Constitution when counsel's performance falls "below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 688, 694.

[9] Generally, "a claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." <u>Murray</u>, 477 U.S. at 489; <u>see Pruett v. Thompson</u>, 996 F.2d 1560, 1570 (4th Cir. 1993). This is so because allowing a petitioner to raise a claim of ineffective assistance of counsel for the first time on federal habeas review in order to show cause for a procedural default would place the federal habeas court "in the anomalous position of adjudicating an unexhausted constitutional claim for

7

In Pennsylvania v. Finley, 481 U.S. 551, 555 (1987), the Supreme Court categorically rejected an argument that "prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions." The Finley Court was reviewing a decision of the Pennsylvania Superior Court, which reversed the dismissal of a petition for postconviction relief after appointed counsel moved to withdraw on the basis that no nonfrivolous grounds for such relief existed. See id. at 553-54. The Pennsylvania Superior Court had ruled that the procedures specified in Anders v. California, 386 U.S. 738 (1967),**10** must be followed when counsel appointed to represent a petitioner pursuing collateral relief from a state conviction determines that no nonfrivolous issues exist and seeks to withdraw. See id. at 554.

The Finley Court emphatically disagreed with the conclusion of the state court. The Supreme Court observed that the procedures set forth in Anders were designed to protect the constitutional right to counsel on direct appeal that the Court recognized in Douglas v. California, 372 U.S. 353 (1963) (holding that the denial of counsel to an indigent defendant on a first appeal as of right violated a "constitutional requirement of substantial equality and fair process" mandated by the Fourteenth Amendment). See Finley, 481 U.S. at 554. The Court ruled, however, that the reasoning in Douglas did not compel the conclusion that because the state had created an avenue for collateral review of a conviction, the Fourteenth Amendment mandated that the state provide effective assistance of counsel--as protected by the procedures prescribed in Anders--to allow an indigent petitioner to pur-

_____

which state court review might still be available" in contravention of "[t]he principle of comity that underlies the exhaustion doctrine." Murray, 477 U.S. at 489. Mackall has satisfied this requirement by presenting his claims of ineffective assistance of habeas counsel to the state court.

**10** Anders requires that appointed counsel who seeks to withdraw because no nonfrivolous issues exist for review must submit a brief referencing anything in the record that arguably could support an appeal; a copy of that brief must be furnished to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct an independent and complete examination of the proceedings to determine if further review is merited. See Anders, 386 U.S. at 744.

8

sue it. See id. at 554-55. Furthermore, the Court explained, Anders did not establish a constitutional rule that appointed attorneys in all proceedings must follow the specified procedures, but"established a prophylactic framework" applicable only when a defendant possesses a constitutional right to counsel. Id. The Court set forth its holding in unmistakably plain language: "We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further." Id. at 555 (emphasis added) (citation omitted).

A plurality of the Court applied this holding in a capital setting in Murray v. Giarratano, 492 U.S. 1 (1989). There, Chief Justice Rehnquist, joined by Justices White, O'Connor, and Scalia, rejected a claim by Virginia death row inmates that the Fourteenth Amendment required that counsel be appointed to permit them to pursue postconviction relief from their capital convictions and sentences. See id. at 3-13. The plurality reiterated the reasoning in Finley:

> "Postconviction relief is even further removed from the criminal trial than is discretionary direct review[for which the Court had rejected a constitutional right to counsel in Ross v. Moffitt, 417 U.S. 600 (1974)]. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature.... States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the state supply a lawyer as well."

Giarratano, 492 U.S. at 8 (second alteration in original) (citations omitted) (quoting Finley, 481 U.S. at 556-57). And, the plurality found this reasoning to apply equally in capital and noncapital settings. See id. at 8-10.[11]

_____

[11] Justice Kennedy concurred in the judgment, reasoning that the constitutional requirement of meaningful access to the courts was not violated by the Virginia scheme. See Giarratano, 492 U.S. at 14-15 (Kennedy, J., concurring in the judgment).

9

Most recently, in Coleman v. Thompson, the Court addressed a claim by Coleman--who was seeking federal habeas relief from his state capital conviction and sentence--that he could demonstrate cause to excuse a procedural default based on ineffective assistance of counsel. See Coleman, 501 U.S. at 752. Coleman's attorney had failed to timely file an appeal from the denial of a state petition for collateral relief, resulting in the dismissal of the appeal based on a state procedural rule. See id. at 727-28. This procedural rule constituted an adequate and independent state ground for denying relief on the claims raised in the state petition and hence foreclosed federal review of those claims absent cause and prejudice or a miscarriage of justice. See id. at 740-44. Coleman argued that cause existed to excuse his default because his attorney had been constitutionally ineffective in failing to note a timely appeal. See id. at 752. The Court, however, rejected Coleman's claim. See id. at 752-57. It explained that Carrier required that in order to constitute cause, attorney error must amount to constitutionally ineffective assistance of counsel and that this standard could not be satisfied in the absence of a constitutional right to counsel. See id. at 752 (citing Carrier, 477 U.S. at 487-88). And, relying on Finley, the Court stated in unequivocal terms:

> Applying the Carrier rule as stated, this case is at an end. There is no constitutional right to an attorney in state post-conviction proceedings. Pennsylvania v. Finley, 481 U.S. 551 (1987); Murray v. Giarratano, 492 U.S. 1 (1989) (applying the rule to capital cases). Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.

Coleman, 501 U.S. at 752. Thus, the Court held that cause based on the attorney's failure to file a timely appeal from the denial of state habeas relief had not been demonstrated because"counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation[, and] Finley and Giarratano established that there is no right to counsel in state collateral proceedings." Id. at 755.

The Court then turned to consider expressly Coleman's argument. He maintained that because the applicable Virginia law prohibited him from raising claims of ineffective assistance of trial or appellate counsel during his direct appeal, state habeas proceedings were the

10

first opportunity that he had to present those issues and that, as a result, he should possess a constitutional right to effective assistance of counsel to pursue those claims on collateral review under the reasoning of Douglas. See id. Addressing this argument, the Court wrote:

> For Coleman to prevail, ... there must be an exception to the rule of Finley and Giarratano in those cases where state collateral review is the first place a prisoner can present a challenge to his conviction. We need not answer this question broadly, however, for one state court has addressed Coleman's claims: the state habeas trial court. The effectiveness of Coleman's counsel before that court is not at issue here. Coleman contends that it was the ineffectiveness of his counsel during the appeal from that determination that constitutes cause to excuse his default. We thus need to decide only whether Coleman had a constitutional right to counsel on appeal from the state habeas trial court judgment. We conclude that he did not.

Id. The Court explained that Douglas "established that an indigent criminal defendant has a right to appointed counsel in his first appeal as of right in state court" because the "`equality demanded by the Fourteenth Amendment'" dictates that when "`the merits of the one and only appeal an indigent has as of right are decided without benefit of counsel, ... an unconstitutional line has been drawn between rich and poor.'" Id. at 755-56 (quoting Douglas, 372 U.S. at 357-58) (emphasis omitted). Thus, the Court refused to accept Coleman's assertion that he was entitled to effective assistance of counsel on his appeal from the denial of his state habeas petition, reasoning that he had "had his one and only appeal, if that is what a state collateral proceeding may be considered" when the state habeas court considered his claims of ineffective assistance of counsel. Id. at 756 (internal quotation marks omitted).

Here, Mackall squarely presents the issue purportedly reserved in Coleman. He argues that he possessed a constitutional right to the effective assistance of counsel in his first state habeas corpus proceeding in order to raise his claims of ineffective assistance of trial and appellate counsel. He correctly observes that under Virginia law claims of ineffective assistance of neither trial nor appellate counsel

11

can be raised on direct appeal.**12** <u>See id.</u> at 755. Because he was unable
to present his allegations of constitutional error on direct appeal, the
first opportunity made available by the Commonwealth for the pre-
sentation of his ineffective assistance of counsel claims was his initial
state habeas proceeding; thus, Mackall contends, the first state habeas
proceeding is analogous to the one and only appeal of right in which
a right to counsel was held to exist in <u>Douglas</u>. Hence, Mackall con-
tinues, he possessed a constitutional right to counsel in the first state
habeas proceeding to raise claims of constitutionally ineffective assis-
tance of trial and appellate counsel that he could not raise on direct
appeal. We cannot agree.

It is true that in <u>Coleman</u> the Supreme Court rejected on narrow
grounds the argument that a petitioner possesses a right to effective
assistance of counsel in state postconviction relief proceedings to pur-
sue constitutional claims that could not be raised during the direct
appeal and is said to have purported to leave unanswered the question
presented here. Nevertheless, we cannot accept Mackall's contention
that <u>Coleman</u> recognizes a loophole and that he possesses a right to
effective assistance of counsel to pursue in his state collateral pro-
ceedings a claim of ineffective assistance of trial or appellate counsel.
The <u>Coleman</u> Court did not adopt an exception to <u>Finley</u>; it merely
rejected Coleman's argument that the Court should create such an
exception on the facts presented. And, critically, the rule for which
Mackall argues here is directly contrary to the explicit holding of
<u>Finley</u> that no constitutional right to counsel exists in collateral
review. <u>Cf. id.</u> at 755 ("<u>Finley</u> and <u>Giarratano</u> established that there
is no right to counsel in state collateral proceedings."). As an inferior

_____

**12** A statutory exception to this general rule was in effect during the
time of Mackall's direct appeal. <u>See</u> Va. Code Ann. § 19.2-317.1
(repealed 1990). Pursuant to that provision, a claim of ineffective assis-
tance of trial counsel could be presented on direct appeal "if all matters
relating to such issue [were] fully contained within the record of the
trial." <u>Id.</u> It is undisputed that Mackall's allegations of ineffective assis-
tance are not among the extremely limited type that could satisfy this
standard. <u>See generally, e.g.,</u> <u>Dowell v. Commonwealth</u>, 351 S.E.2d 915,
919 (Va. Ct. App. 1987) (considering on direct appeal claim of ineffec-
tive assistance of counsel due to conflict of interest arising from coun-
sel's representation of multiple codefendants).

appellate court, we are not at liberty to disregard this controlling authority. See Agostini v. Felton, 117 S. Ct. 1997, 2017 (1997) (reaffirming that "if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions" (internal quotation marks omitted)). Thus, we are bound by the holding in Finley.**13**

Because Mackall has no right to effective assistance of counsel in his state habeas proceedings, he cannot demonstrate cause to excuse the procedural default of his claims that his trial and appellate counsel were constitutionally ineffective. Consequently, federal habeas review of those claims is barred.

III.

Mackall next contends that the state trial court violated the Eighth and Fourteenth Amendments by limiting testimony he sought to introduce in mitigation during the sentencing phase of his trial. During cross-examination of prosecution witness Patricia Hollingsworth, Mackall's former probation officer, Mackall sought to elicit testimony that he had asked to be incarcerated for a prior offense in Morgantown, West Virginia rather than Lorton Reformatory in Virginia because he had many friends at Lorton and "had been hanging around with the wrong group." J.A. 1157. Further, during presentation of his case in mitigation, Mackall sought to develop the basis for Dr. Carol Rayburn's opinion that Mackall's mental functioning was impaired and to elicit Mackall's self-reports to her that he had experienced hallucinations. Additionally, Mackall attempted to have Terry Hollar, a nurse from the local jail, testify that he had admitted prior drug use to her. The state trial court sustained prosecution objections to these lines of testimony.

_____

**13** We note that each of the courts of appeals that has been asked to adopt the exception alluded to in Coleman has similarly rejected that invitation. See Hill v. Jones, 81 F.3d 1015, 1024-26 (11th Cir. 1996), cert. denied, 117 S. Ct. 967 (1997); Bonin v. Calderon, 77 F.3d 1155, 1159-60 (9th Cir.), cert. denied, 116 S. Ct. 980 (1996); Nolan v. Armontrout, 973 F.2d 615, 616-17 (8th Cir. 1992).

Mackall alleged error based on each of these trial court rulings to the Supreme Court of Virginia during his direct appeal, asserting that the exclusions violated state law. However, Mackall did not base his claims of error on a constitutional right to admit mitigating testimony or contend that the refusal of the trial court to admit this testimony rendered his sentencing proceeding fundamentally unfair. Thus, Mackall failed to exhaust the claims he now seeks to raise. See Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam) (holding that argument to state supreme court that an evidentiary ruling by trial court violated state law was insufficient to exhaust claim that the ruling constituted a violation of a federal constitutional right, and rejecting the argument that similarity of claims is adequate to exhaust); Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir.) (explaining that in order for federal claim to be exhausted, its substance must be presented to the highest state court), cert. denied, 118 S. Ct. 102 (1997); Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994) (noting that exhaustion requires that petitioner do more than apprise state court of the facts; he must "explain how those alleged events establish a violation of his constitutional rights"); id. at 995 (explaining that exhaustion requires "more than scatter[ing] some makeshift needles in the haystack of the state court record" (internal quotation marks omitted)). Because presentation of these claims to the state court at this juncture would be fruitless, they properly are considered to be procedurally barred. See George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ("A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."), cert. denied, 117 S. Ct. 854 (1997). And, because Mackall does not maintain that this default may be excused by cause and prejudice or a miscarriage of justice, we hold these allegations of constitutional error to be procedurally defaulted.

IV.

Mackall's sole undefaulted claim is that the state trial court violated the Sixth and Fourteenth Amendments by refusing to question prospective jurors concerning their views on the death penalty. We disagree.

The Sixth and Fourteenth Amendments "guarantee[ ] a defendant on trial for his life the right to an impartial jury." Morgan v. Illinois,

14

504 U.S. 719, 728 (1992). And, "`the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment ... is whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."'" Id. (quoting Wainwright v. Witt, 469 U.S. 412, 424 (1985)) (alteration in original). "[A] juror who in no case would vote for capital punishment, regardless of his or her instructions, is not an impartial juror and must be removed for cause." Id. Likewise, a juror "who will automatically vote for the death penalty in every case will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do;" such a juror is not impartial and should be removed for cause. Id. at 729. A corollary of the right to an impartial jury is the requirement of a voir dire sufficient to permit identification of unqualified jurors because without an adequate voir dire, a trial judge will not be able to remove unqualified jurors and the defendant will not be able to exercise challenges for cause. See id. at 729-30. Thus, a capital defendant must be allowed on voir dire to ascertain whether prospective jurors are unalterably in favor of the death penalty in every case, regardless of the circumstances, rendering them unable to perform their duties in accordance with the law. See id. at 735-36. Questions directed simply to whether a juror can be fair, or follow the law, are insufficient. See id. 734-36.

Although the state trial court declined Mackall's request to ask prospective jurors their views on the death penalty, it did ask prospective jurors the following questions relating to the death penalty:

> Do you have any opinion such as to prevent any of you from convicting anyone of an offense punishable with death?
>
> ....
>
>  If you were to find the defendant guilty of capital murder, is there any juror who could never vote to impose the death penalty or would refuse to even consider its imposition in this case?
>
> ....

15

> ...If you were to sit as a juror in this case and the jury were to convict the defendant of capital murder, would you also be able to consider voting for a sentence less than death?

J.A. 500-01. These questions focus on the relevant circumstance of whether a prospective juror entertains opinions on capital punishment that would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath and are adequate to identify those who would automatically vote for the death penalty. Consequently, we conclude that the voir dire conducted by the state trial court did not violate Mackall's Sixth or Fourteenth Amendment rights.

V.

In sum, we conclude that Mackall has not demonstrated cause to excuse his procedural default of both his claim that he received ineffective assistance of trial and appellate counsel and his claim that the state trial court violated the Eighth and Fourteenth Amendments by excluding certain testimony during the sentencing phase of his trial. We also hold that the state trial court did not violate the Sixth or Fourteenth Amendments by refusing to inquire into the prospective jurors' views of the death penalty. Accordingly, we affirm.

AFFIRMED

BUTZNER, Senior Circuit Judge, with whom Judge Murnaghan joins, dissenting:

The Supreme Court of Virginia, for good and sufficient reasons, will not decide on direct appeal whether counsel was constitutionally ineffective during trial and direct appeal. This appeal raises the following question, which was recognized and reserved in Coleman v. Thompson, 501 U.S. 722, 755 (1991). Did Mackall have a right to the assistance of competent counsel to pursue the issue of allegedly incompetent counsel in his state habeas corpus proceeding? Sound precedent suggests an affirmative answer.

16

The Sixth Amendment guarantees a person charged with a felony a right to counsel at trial. <u>Gideon v. Wainwright</u>, 372 U.S. 335, 336-45 (1963).

The right to counsel extends to the first appeal (sometimes called a direct appeal). <u>Douglas v. California</u>, 372 U.S. 353, 355-58 (1963).

Counsel must be competent. <u>Strickland v. Washington</u>, 466 U.S. 668, 684-87 (1984).

Therefore, to give effect to the foregoing precedent, Mackall had a right to pursue his Sixth Amendment guarantee of competent counsel during trial and appeal in his state habeas corpus proceeding with the assistance of competent counsel. Although a prisoner is not constitutionally entitled to counsel in a collateral proceeding, the exception to this general rule, which Mackall seeks, is in reality a direct attack on the competency of his trial and appellate counsel in the only forum available to him--a habeas corpus proceeding. For this limited purpose Mackall is entitled to the assistance of competent counsel.

Because Mackall challenges the competency of his trial and appellate counsel and of his first habeas counsel, I would vacate the judgment denying the writ and remand the case to the district court. The district court should conduct an evidentiary hearing to determine the competency of Mackall's first habeas counsel. If this counsel was competent, the district court should reinstate the judgment denying the writ. If the first habeas counsel was incompetent, the district court should determine whether Mackall's trial and appellate counsel were incompetent. If his trial and appellate counsel were competent, the district court should reinstate the judgment denying the writ. If his counsel were incompetent, the district court should grant the writ with an appropriate proviso for a new trial. In all other respects, I would affirm the judgment of the district court.

17