**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-7033

THOMAS A. CHILTON, JR.,

                  Petitioner - Appellant,

        v.

WILLIAM PAGE TRUE, Warden,

                  Respondent - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  James R. Spencer, Chief District Judge.  (3:05-cv-00490-JRS)

Submitted:  June 16, 2008            Decided:  May 1, 2009

Before MICHAEL, KING, and SHEDD, Circuit Judges.

Affirmed in part; vacated and remanded in part by unpublished per curiam opinion.

Neal L. Walters, James W. Burke, Per David Midboe, UNIVERSITY OF VIRGINIA LAW SCHOOL OF LAW APPELLATE LITIGATION CLINIC, Charlottesville, Virginia, for Appellant. Robert F. McDonnell, Attorney General of Virginia, Jerry P. Slonaker, Senior Assistant Attorney General, Donald E. Jeffrey, III, Assistant Attorney General, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Thomas A. Chilton, Jr., appeals from the denial of his 28 U.S.C. § 2254 (2000) petition. He seeks to challenge his Virginia convictions for robbery and entering a bank while armed with a deadly weapon. We previously granted a certificate of appealability on the following four claims: (1) whether Chilton showed cause and prejudice sufficient to overcome his procedural default on his claim that the Commonwealth withheld evidence that the one hundred dollar bill was left in the bank; (2) whether his attorney provided ineffective assistance when he failed to timely obtain Chilton's jail medical records and/or move for a continuance to obtain them; (3) whether Chilton's attorney was ineffective for failing to interview the bank teller prior to trial; and (4) whether Chilton's counsel was ineffective for failing to pursue the Fas Mart employee witness. After briefing and further consideration, we affirm in part and vacate and remand in part.

Federal courts may only grant writs of habeas corpus in those instances where the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In addition, a state court's findings of fact must be presumed correct unless the

petitioner rebuts that presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

With regard to Chilton's ineffective assistance claims, he must show that (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984). Under the second prong, in order to establish that counsel's alleged incompetence prejudiced his case, a movant must prove that there is a reasonable probability that his trial would have had a different outcome absent such errors by counsel. Id. at 694.

I.

Betty Bolton, a teller at Union Bank and Trust, testified at trial that, on October 16, 1998, Chilton entered the bank and asked her to change a one hundred dollar bill. As she handed him the change, he told her to give him all of her money. Along with the rest of the money, she gave him some of the smaller bills that were her "bait money." As he asked for her to give him all of her money, she noticed a long dark object that appeared to be a gun on the counter. His hand was on the object, but she believed that she saw the barrel. As she was pulling more money from the drawer, he asked her to stop, which Bolton testified was "odd." Then, Chilton asked for the one hundred dollar bill back. Bolton testified that

- 3 -

the man appeared very calm and that the entire incident took less than a minute.  After Bolton gave Chilton less than $300, Chilton left the bank.

Chilton contends that, while he was in prison in September 2001 following the decision in his direct appeal, the one hundred dollar bill was returned to him by the Hanover Police Department.[1]  He states that this was the first time he had been informed that the prosecution had evidence that he did not leave the bank with the $100 bill.  He raised a claim based on this evidence--specifically, that the State withheld this evidence--in his brief to the Supreme Court of Virginia on direct appeal, but the claim was denied without discussion.  In addition, he raised the claim in his state post-conviction proceeding, and the court found the claim defaulted.  Chilton claims that he can show cause and prejudice sufficient to forgive his default.  See Mackall v. Angelone, 131 F.3d 442, 445 (4th Cir. 1997) (en banc).

Chilton states that he can show cause because he was not aware and had no reason to believe that the evidence was withheld until it was returned to him after his time to raise the issue on appeal from his conviction had passed.  See Murray v. Carrier, 477 U.S. 478, 488 (1986) (holding that a showing that the factual basis for a claim was not reasonably available will satisfy the "cause"

_____

[1]The return form does not disclose the circumstances under which the bill was found.

- 4 -

requirement). The Commonwealth relies on trial counsel's affidavit, submitted during the state court post-conviction proceeding, in which counsel stated that "[o]n the way out of the bank Chilton dropped the $100 bill on the floor, and this was recovered by bank employees; despite this, Chilton left with more than $100. Whether Chilton left the bank with the $100 bill was never an issue--everyone, including Chilton, knew that the $100 bill had been dropped in the bank, I never told him anything otherwise." Thus, the Commonwealth contends that, at the time of his appeal, Chilton was aware that the one hundred dollar bill had been left in the bank, and he could have properly raised the issue on appeal.

However, as Chilton points out, it is not at all clear that "everyone" knew that he had "dropped" the $100 bill in the bank. Both the Commonwealth and Chilton's attorney (in closing argument) told the jury that Chilton left the bank with the bill. Moreover, neither Bolton nor Chilton testified as to what happened to the one hundred dollar bill. The record does not disclose why Chilton's attorney believed that the bill was dropped by Chilton, where it was recovered, or by whom. Further, the record does not disclose why, if Chilton's attorney was aware of the "dropped" bill, he argued at trial that Chilton took it with him when he left the bank. Thus, we find that a material issue of fact exists regarding when Chilton became aware that there was evidence

- 5 -

supporting the conclusion that he left the bank without the one hundred dollar bill.

Not only must Chilton show cause for his failure to raise this claim earlier, he must also show resulting prejudice. To show prejudice, Chilton must demonstrate "a reasonable probability that the result of the trial would have been different." Harbison v. Bell, 408 F.3d 823, 834 (6th Cir. 2005), cert. denied, 547 U.S. 1101 (2006). The evidence against Chilton was quite substantial. There was no doubt as to the identity of the robber, and Chilton confessed. However, Chilton's defense rested on his mental state and his assertions that he was attempting to get change. Thus, the whereabouts of the one hundred dollar bill was material. The fact that Chilton took a stack of small bills and left without his one hundred dollar bill certainly bolsters his claim that he was trying to get change. Instead, the jury was told that Chilton took the bill with him, seriously undermining his defense. We find that Chilton has satisfied the Harbison standard and made a showing that there is a "reasonable probability" that the result of his trial would have been different had the jury heard this evidence. See Strickland v. Washington, 466 U.S. 668, 694 (1984) ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

For the foregoing reasons, we vacate the district court's dismissal of this claim as defaulted and remand for a hearing on

when Chilton discovered that the Commonwealth recovered the one hundred dollar bill from inside the bank. The facts developed at the hearing will likely also aid the court in determining whether this information would have affected the jury's decision. Should the court find on remand that Chilton showed cause and prejudice sufficient to overcome his default, the court should then address the merits of Chilton's claim.

## II.

Chilton claims that his attorney was ineffective for failing to investigate Chilton's alleged breakdown when he was jailed after his arrest. Chilton asserts that he was treated with anti-psychotic drugs and that, despite his request, his attorney failed to timely obtain the jail records, consult with his treating physician, and move for a continuance when the records could not be located. The medical records showed that Chilton was medicated and that he was complaining of depression, suicidal thoughts, delusions, and hearing voices. Chilton claims that these records would have aided both the expert witnesses who testified at the motion in limine on his insanity defense and his defense at trial.

The trial court held a pre-trial hearing on the Commonwealth's motion to exclude expert evidence regarding Chilton's insanity defense. At the hearing, three doctors testified that Chilton was sane at the time of the offense, and

therefore, the state court granted the motion. However, Drs. Pasquale and Gibby also testified that an individual who was suffering from post-traumatic stress disorder (Chilton was a Vietnam veteran) and/or was a heavy drug user (as Chilton was) could experience blackouts or extreme confusion. Dr. Israel testified that Chilton suffered from depression and post-traumatic stress disorder, which caused him to function at a diminished mental capacity.

Chilton's attorney tried unsuccessfully for months to obtain the jail records. The records were eventually filed in court, but when counsel asked for them before trial, he was told that they had not been filed. At trial, no further objection was made, and the records were not discovered until after Chilton's conviction.

In his affidavit submitted in state court, Chilton's attorney stated that, although he had subpoenaed the records, he was told that they had not been delivered. He asserted that he told Chilton they could get a continuance, but Chilton elected to proceed to trial anyway. In addition, counsel stated that none of the examining physicians believed it necessary to review the records. Prior to Chilton's trial, the court swore him in and questioned him regarding whether he was ready for trial. Chilton testified that he had sufficient time to discuss his defenses with

his attorney, that he was satisfied with his attorney, and that he was ready for trial.

In Chilton's state filings, which consisted of a verified petition and accompanying memorandum of law, he noted that Drs. Israel and Gibby had actually testified that information regarding Chilton's demeanor nearer to the time of the crime would have been helpful.[2] In addition, Chilton averred that he testified he was prepared for trial, because his attorney told him that the judge would not grant any more continuances. In fact, a week and half before the scheduled trial date, the judge stated in open court, "And the Court finds for the record that what is going on here is Mr. Chilton is attempting to dictate how the case will be tried. Twelve people are going to be in the box that day, and I'm not going to delay it. I'm not going to delay the trial again." (Trial Tr. at 381).

The state court denied the claim when it was raised in Chilton's post-conviction proceeding, reasoning that (1) none of the professionals who evaluated Chilton believed the jail records would have been helpful, (2) counsel reasonably relied on the clerk's statement that the records had not been timely delivered to the court, and (3) Chilton testified that he was ready to go to

---

[2]Drs. Israel and Gibby testified specifically that the reports of witnesses to the crime would have been helpful to their analyses. The jail medical records begin less than two months after the crime. The testifying doctors did not examine Chilton until well over seven months after the crime.

trial and satisfied with his attorney. We conclude that the first finding was unreasonable given the record before the state court, as it is belied by the doctors' testimony that information on Chilton's demeanor closer to the crime would be helpful. In addition, the doctors were never specifically asked if the jail records would be helpful, so it is unclear if they even knew of their existence. The second finding is irrelevant to counsel's failure to move for a continuance so that the records could be located, and the third finding, while true, is not determinative.

Chilton alleged that his attorney convinced him to abandon the issue of the jail records, by telling him that the judge would not grant any more continuances. He supported these allegations with the court's own statements, as well as his verified petition. In addition, the record is replete with Chilton's requests for continuances, which undermines counsel's assertions that Chilton wanted to forego a continuance and go right to trial.

Chilton's attorney claims that he told Chilton they could get a continuance, but Chilton decided to forego one. He supported these assertions with his affidavit, as well as Chilton's testimony that he was ready to proceed with trial.[3]

---

[3]This testimony did not address the records in any way. Moreover, accepting Chilton's allegations as true, he believed that a continuance was not a possibility at the time of his testimony.

Thus, both parties submitted detailed and supported statements on the issue of whether Chilton's attorney informed him that a continuance was not a possibility and that he should proceed to trial without the records. The state court did not hold a hearing and did not make findings on this issue, resting instead on the unreasonable conclusion that the doctors did not want to evaluate the jail records and the somewhat irrelevant conclusions that Chilton's attorney reasonably relied on the court's statement that the records had not been filed and that Chilton testified he was ready for trial.

Even if Chilton proves that his attorney improperly convinced him to forego a continuance, he must also show that he was prejudiced by this action. While the state court unreasonably concluded that the doctors did not feel that the records would have been helpful, there remains a question as to whether the records would have actually altered the doctors' conclusions. While the records certainly show that Chilton was suffering from some psychological problems, it is unclear whether this information would actually lead psychologists to determine that Chilton was insane or whether the jury would be moved by this evidence. However, neither the state court nor the district court fully addressed the prejudice prong of this claim.

Accordingly, we conclude that the state court's factual findings are, in part, unreasonable and, in part, irrelevant.

Further, the state court failed to make a factual finding on the central issue of what Chilton's attorney told him regarding the possibility of a continuance.  Thus, we vacate the district court's order and remand for a hearing to determine whether Chilton's attorney acted unreasonably and whether Chilton was prejudiced thereby.

III.

With regard to Chilton's remaining claims, we have carefully considered his filings, as well as the entire record, and we conclude that the district court did not commit reversible error in denying these claims.  Accordingly, we affirm the denial of these claims for the reasons stated by the district court.  Chilton v. True, No. 3:05-cv-00490-JRS (E.D. Va. May 18, 2006).  We deny Chilton's motions for application of funds, expansion of the certificate of appealability, suspension of the briefing order, and inspection of the records.  We grant Chilton's motion to amend his reply brief and deny his motion to file a pro se supplemental brief.  We deny his motion to appoint counsel as moot.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART;
VACATED AND REMANDED IN PART