UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

THOMAS TRESHAWN IVEY,
            *Petitioner-Appellant,*

v.

WILLIAM D. CATOE, Commissioner,
South Carolina Department of
Corrections; CHARLES M. CONDON,
Attorney General, State of South
Carolina,

            *Respondents-Appellees.*

No. 01-11

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
G. Ross Anderson, Jr., District Judge.
(CA-00-1294-3-13BD)

Argued: January 24, 2002

Decided: March 26, 2002

Before WIDENER, WILKINS, and NIEMEYER, Circuit Judges.

Dismissed by unpublished opinion. Judge Wilkins wrote the opinion,
in which Judge Widener and Judge Niemeyer joined.

## COUNSEL

**ARGUED:** William Harry Ehlies, II, Greenville, South Carolina, for
Appellant. Donald John Zelenka, Assistant Deputy Attorney General,
SOUTH CAROLINA OFFICE OF THE ATTORNEY GENERAL,

Columbia, South Carolina, for Appellees. **ON BRIEF:** Teresa L. Norris, CENTER FOR CAPITAL LITIGATION, Columbia, South Carolina, for Appellant. Charles M. Condon, Attorney General, John W. McIntosh, Chief Deputy Attorney General, SOUTH CAROLINA OFFICE OF THE ATTORNEY GENERAL, Columbia, South Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

WILKINS, Circuit Judge:

Thomas Treshawn Ivey seeks leave to appeal an order of the district court denying his petition for habeas corpus relief from his conviction and death sentence for the murder of Thomas Harrison.[1] *See* 28 U.S.C.A. § 2254 (West 1994 & Supp. 2001). Because we conclude that Ivey has failed to make "a substantial showing of the denial of a constitutional right," 28 U.S.C.A. § 2253(c)(2) (West Supp. 2001), with respect to any of his claims, we deny his application for a certificate of appealability and dismiss the appeal.

I.

In early January 1993, Ivey and Vincent Neumon escaped from a prison in Alabama, where Ivey was detained pending trial for murder. The pair traveled to Columbia, South Carolina, where they kidnaped Robert Montgomery. Ivey and Neumon forced Montgomery to drive them to North, South Carolina, where Ivey shot and killed Montgomery.[2]

---

[1]Ivey named William D. Catoe, Commissioner of the South Carolina Department of Corrections, and Charles M. Condon, Attorney General of South Carolina, as Respondents. For ease of reference, we will refer to Respondents as "the State" throughout this opinion.

[2]In a separate proceeding, Ivey was convicted of Montgomery's murder and sentenced to death. The conviction and sentence were affirmed on direct appeal. *See State v. Ivey*, 502 S.E.2d 92 (S.C. 1998).

The following day, Ivey and Neumon abandoned Montgomery's vehicle and stole another, in which they found the owner's identification and some blank checks.

On January 15, Ivey, Neumon, and Patricia Perkins (whom Ivey and Neumon had met in Columbia) traveled to Orangeburg, South Carolina. All three entered a department store located in a shopping mall, where Neumon made purchases using one of the stolen checks. Ivey then left the store while Perkins and Neumon continued to "shop." When Neumon attempted to make another purchase, the clerk became suspicious and informed Neumon that she would have to obtain approval. Neumon left the store and spoke with Ivey, who then went inside to find Perkins.

In the meantime, the clerk had contacted a store security officer, who in turn contacted the police. A police officer and an investigator located Ivey and Perkins in the mall and questioned them. Upon determining that Ivey was not the one who had attempted to make the suspicious purchase, they informed Ivey that he could leave. At that point the victim, Orangeburg Police Officer Thomas Harrison, arrived and began to question Ivey. During the conversation, a .357 Magnum that was in Ivey's coat pocket discharged (Ivey testified that the weapon discharged accidentally). The bullet hit the floor and fragmented, wounding Officer Harrison in the leg. Officer Harrison reached for his own firearm, whereupon Ivey pulled out his weapon and shot Officer Harrison five times at close range, killing him. Ivey fled the store but was soon apprehended.

Ivey was subsequently tried, convicted, and sentenced to death for the murder of Officer Harrison. Ivey appealed, maintaining, *inter alia*, that the trial court had erred in refusing to charge the jury on voluntary manslaughter and in admitting victim impact testimony from Officer Harrison's mother (Mrs. Harrison). The South Carolina Supreme Court affirmed, rejecting the former claim on the merits and the latter claim on both procedural and substantive grounds. *See State v. Ivey*, 481 S.E.2d 125, 127-28 (S.C. 1997).

Ivey thereafter filed an application for post-conviction relief (PCR), claiming that trial counsel were ineffective for failing to object to a number of statements made by the State in its penalty-

phase closing argument. Following a hearing, the PCR court denied relief.

Ivey filed this habeas action on October 30, 2000, claiming that:

1. The refusal to charge the jury on voluntary manslaughter violated his Eighth and Fourteenth Amendment rights;

2. A portion of Mrs. Harrison's victim impact testimony violated his Eighth and Fourteenth Amendment rights;

3. Trial counsel were constitutionally ineffective for failing to object to a portion of the State's closing argument that allegedly referred to Ivey's failure to testify;

4. Trial counsel were constitutionally ineffective for failing to object to

   (a) cross examination of corrections officer Audie Hudson regarding prison conditions, and

   (b) closing argument based on Hudson's testimony on cross-examination; and

5. Trial counsel were constitutionally ineffective for failing to object to the State's improper bolstering of Vincent Neumon's testimony.

The petition was referred to a magistrate judge, who recommended denying habeas relief. Specifically, the magistrate judge concluded that claims 1, 3, and 4(b) were without merit and that claims 2, 4(a), and 5 were procedurally defaulted and, even if not defaulted, without merit.

Shortly before the magistrate judge issued his report and recommendation, Ivey moved the district court to stay the proceedings, noting that he had filed a second PCR application in state court for the

purpose of exhausting claims 4(a) and 5, which had not previously been presented to the state court. The district court denied the motion. After the issuance of the magistrate judge's report, Ivey filed objections in which he reiterated his assertion that the district court should stay the proceedings pending the resolution of his second PCR application.[3] The district court adopted the report and recommendation of the magistrate judge and denied Ivey's renewed motion for a stay. The district court subsequently denied Ivey's application for a certificate of appealability.

## II.

In order to demonstrate his entitlement to a certificate of appealability, Ivey must make "a substantial showing of the denial of a constitutional right." 28 U.S.C.A. § 2253(c)(2). As the Supreme Court has explained, a habeas petitioner may make such a showing by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court has rested its denial of a claim on a procedural ground without considering the merits of a constitutional claim, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* The assessment of whether a certificate of appealability should be granted must be made on an issue-by-issue basis. *See* 28 U.S.C.A. § 2253(c)(3) (West Supp. 2001).

When, as here, the habeas petition was filed in the district court after the enactment of the AEDPA, there is an additional layer to our analysis: Claims adjudicated on the merits in state court must be reviewed according to the deferential standard set forth in 28 U.S.C.A. § 2254(d). Section 2254(d) requires the district court (and this court, on de novo review of the ruling of the district court) to determine whether

---

[3]At oral argument, counsel informed us that the case has been assigned to a judge but that counsel have not yet been appointed for Ivey.

the adjudication of the claim [by the state court]—

>    (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d); *see Frye v. Lee*, 235 F.3d 897, 903 (4th Cir. 2000), *cert. denied*, 121 S. Ct. 2614 (2001).[4] A state court decision is "contrary to" clearly established Supreme Court precedent when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision rests on an "unreasonable application" of clearly established Supreme Court precedent when "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[5] *Id.*

---

[4]The mere fact that the district court makes such a determination does not automatically entitle the petitioner to habeas relief. Rather, upon determining that the adjudication of a claim by a state court contravened or unreasonably applied Supreme Court precedent, the district court must then independently assess the claim to determine whether the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C.A. § 2254(a). *See Rose v. Lee*, 252 F.3d 676, 689-91 (4th Cir.), *cert. denied*, 122 S. Ct. 318 (2001).

[5]When the state court does not articulate the rationale for its decision, the district court must conduct an independent review of the record and the applicable law to determine whether the *result* reached by the state court "contravenes or unreasonably applies clearly established federal law." *Bell v. Jarvis*, 236 F.3d 149, 163 (4th Cir. 2000) (en banc) (internal quotation marks omitted), *cert. denied*, 122 S. Ct. 74 (2001).

In sum, when ruling on an application for certificate of appealability, we must conduct a de novo review to determine whether the resolution of each claim by the district court was at least debatable among reasonable jurists. For claims rejected on procedural grounds without consideration of the merits, we may not grant a certificate of appealability unless (1) reasonable jurists could debate the correctness of the procedural ruling by the district court, and (2) reasonable jurists could debate the validity of the constitutional claim stated by the petitioner. When a district court has rejected a constitutional claim on the merits (whether as the sole basis for rejecting a claim or as an alternative to a procedural ruling) in a post-AEDPA petition, our review will take one of two courses. If a state court adjudicated the claim on the merits, we must decide whether reasonable jurists could debate the propriety of the decision of the district court to defer to the state court ruling under § 2254(d). If the claim has not been adjudicated on the merits by a state court, we must decide whether reasonable jurists could debate the correctness of the ruling of the district court that the petitioner's constitutional rights were not violated.

## III.

Ivey makes only a single claim regarding the guilt/innocence phase of his trial: He maintains that the refusal of the trial court to instruct the jury on the lesser-included offense of voluntary manslaughter violated his Fourteenth Amendment right to due process.[6] On direct appeal, the South Carolina Supreme Court concluded that because the evidence presented at trial did not justify a voluntary manslaughter charge, the denial of the charge did not violate Ivey's constitutional rights. The district court determined that this ruling was entitled to deference under § 2254(d)(1).[7] Because we conclude that reasonable

---

[6]Ivey also maintains that the refusal to give the requested instruction violated his Eighth Amendment rights, but he provides no argument in support of this assertion. Accordingly, we disregard it. *See* Fed. R. App. P. 28(a)(9)(A); *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999). This omission does not reflect adversely on Ivey's counsel, who performed their duties ably.

[7]Ivey argues that the State Supreme Court unreasonably determined the facts in light of the record evidence. *See* 28 U.S.C.A. § 2254(d)(2). The record reveals no disputed factual questions, however, but rather

jurists would not find the correctness of the district court ruling debatable, we deny a certificate of appealability as to this claim.

During the trial, Ivey presented evidence that his firearm discharged accidentally and that he shot Officer Harrison only after the latter reached for his weapon in response to the accidental discharge of Ivey's weapon. Based on this evidence, Ivey requested an instruction on the lesser offense of voluntary manslaughter. The trial court refused to give the requested instruction, reasoning that the evidence presented at trial was insufficient to demonstrate either heat of passion or sufficient legal provocation, both of which are required for a voluntary manslaughter charge under South Carolina law. On direct appeal, the South Carolina Supreme Court affirmed on the basis that even if Ivey had presented evidence that he acted in the heat of passion, he had failed to establish any evidence of sufficient legal provocation. *See Ivey*, 481 S.E.2d at 127. The court specifically acknowledged its prior holding in *State v. Linder*, 278 S.E.2d 335 (S.C. 1981), where it held that the use of unnecessary force by a law enforcement officer in the course of his duties could constitute the provocation necessary for a voluntary manslaughter charge, *see Linder*, 278 S.E.2d at 337. The South Carolina Supreme Court concluded that *Linder* was of no assistance to Ivey, however, because Officer Harrison had the right to reach for his firearm in self-defense after Ivey's weapon discharged.[8]  *See Ivey*, 481 S.E.2d at 127.

Ivey contends that the denial of his request for a voluntary manslaughter instruction violated the Due Process Clause of the Fourteenth Amendment. In support of this argument, Ivey cites *Beck v. Alabama*, 447 U.S. 625, 638 (1980), in which the Supreme Court

---

indicates that the only question before the state court was the legal significance of an undisputed sequence of events. Accordingly, the ruling of the South Carolina Supreme Court is properly reviewed under § 2254(d)(1).

[8]In a petition for rehearing, Ivey maintained that he was entitled to a voluntary manslaughter instruction under the doctrine of imperfect self-defense, a contention he raises again in his appellate brief. South Carolina, however, does not recognize imperfect self-defense. *See State v. Finley*, 290 S.E.2d 808, 809 (S.C. 1982).

struck down an Alabama statute that prohibited juries in capital cases from convicting the defendant of a lesser offense than capital murder. Ivey maintains that *Beck* stands for the proposition that the jury must be given the option of convicting on a lesser-included offense in all capital cases. The rule in *Beck* is not so broad, however. As the Supreme Court subsequently clarified, "due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction." *Hopper v. Evans*, 456 U.S. 605, 611 (1982).

Here, the South Carolina Supreme Court determined that, as a matter of state law, the evidence did not support the giving of a voluntary manslaughter instruction because there was no legal provocation. This determination is fatal to Ivey's due process claim.[9]

## IV.

During the penalty phase, the State presented victim impact testimony from Officer Harrison's parents and his widow. Ivey contends that the following portion of Mrs. Harrison's testimony exceeded the bounds of constitutionally permissible victim-impact testimony:

> Q. What's the hardest part now about his death and the way he died?

> A. Well, when I think about the way he died, I can't help but feel sort of angry because I just feel like it was so useless.

> *Mr. Johnson [defense counsel]:* Your Honor, I sincerely apologize, but I think we're going out of the bounds now.

---

[9]Ivey challenges the correctness of the ruling of the South Carolina Supreme Court, maintaining that he was entitled to the voluntary manslaughter instruction as a matter of state law. However, we are bound by the interpretation of state law by the South Carolina Supreme Court. *See Thomas v. Davis*, 192 F.3d 445, 449 n.1 (4th Cir. 1999).

*The court:* All right, Sir. I'll allow it. Go ahead.

A.   Somebody — this man who shot my son — said that
     he ran out of the store, and when he realized he was
     going to be arrested, he laid down on the ground and
     said, "Don't shoot; don't kill me; don't kill me." But he
     didn't think about that when my son was lying on the
     floor in front of him in the store saying "Don't do this;
     don't do this." And — well, it hurts.

J.A. 662-63.

On direct appeal, Ivey asserted that the admission of the above-
quoted testimony violated the Constitution because it amounted to a
statement of opinion that Ivey should be put to death. The South Car-
olina Supreme Court rejected this argument on the bases that it was
barred by Ivey's failure to specifically object to the testimony and that
the argument was without merit. *See Ivey*, 481 S.E.2d at 127-28. The
district court, in turn, concluded that the claim was procedurally
defaulted and, alternatively, that the ruling of the South Carolina
Supreme Court did not contravene or unreasonably apply Supreme
Court precedent. We deny a certificate of appealability as to this
claim.

### A.

Absent cause and prejudice or a miscarriage of justice, a federal
habeas court may not review constitutional claims when a state court
has declined to consider their merits on the basis of an adequate and
independent state procedural rule. *See Harris v. Reed*, 489 U.S. 255,
262 (1989). Such a rule is adequate if it is regularly or consistently
applied by the state court, *see Johnson v. Mississippi*, 486 U.S. 578,
587 (1988), and is independent if it does not "depend[ ] on a federal
constitutional ruling," *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).

Here, the South Carolina Supreme Court ruled that Ivey's chal-
lenge to Mrs. Harrison's testimony was barred by his failure to make
a specific objection. *See Ivey*, 481 S.E.2d at 127 (citing *State v.
Tucker*, 462 S.E.2d 263, 265 (S.C. 1995)). Ivey does not dispute that

the requirement of a specific objection is an adequate and independent state procedural rule, nor does he assert cause and prejudice to excuse the default. Rather, he maintains that the state court erred in ruling that the claim was procedurally barred. However, "[a] basic tenet of federal *habeas* review is that a federal court does not have license to question a state court's finding of procedural default, if based upon an adequate and independent state ground." *Barnes v. Thompson*, 58 F.3d 971, 974 n.2 (4th Cir. 1995). Accordingly, we conclude that reasonable jurists could not debate the correctness of the ruling by the district court that this claim is procedurally defaulted.

## B.

Even if Ivey's challenge to the victim impact testimony of Mrs. Harrison were not procedurally defaulted, Ivey still would not be entitled to habeas relief. The district court held that the rejection of the merits of the claim by the South Carolina Supreme Court neither was contrary to, nor involved an unreasonable application of, clearly established Supreme Court precedent. We conclude that the correctness of this ruling is not debatable among reasonable jurists.

In *Payne v. Tennessee*, 501 U.S. 808 (1991), the Supreme Court held that the Eighth Amendment does not impose a per se bar on "evidence about the victim and about the impact of the murder on the victim's family." *Payne*, 501 U.S. at 827; *see id.* at 830 (overruling *Booth v. Maryland*, 482 U.S. 496 (1987), and *South Carolina v. Gathers*, 490 U.S. 805 (1989)). There are two limitations on victim impact testimony, however. First, *Payne* left intact *Booth*'s prohibition on "family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence." *Payne*, 501 U.S. at 830 n.2; *see Booth*, 482 U.S. at 508-09; *see also United States v. McVeigh*, 153 F.3d 1166, 1217 (10th Cir. 1998). Second, the Due Process Clause prohibits the introduction of victim impact testimony "that is so unduly prejudicial that it renders the trial fundamentally unfair." *Payne*, 501 U.S. at 825.

The South Carolina Supreme Court did not rule unreasonably in concluding that Mrs. Harrison's testimony did not contravene either of these constitutional limitations on victim impact testimony. Contrary to Ivey's assertion, Mrs. Harrison did not opine that Ivey should

be sentenced to death. In the challenged statement, she simply expressed her grief, pain, and anger arising from the manner of her son's death. *Cf. Booth*, 482 U.S. at 508-09 (holding that testimony that victims were "butchered like animals" and that victims' son "doesn't think anyone should be able to do something like that and get away with it" violated the Eighth Amendment (internal quotation marks omitted)). Additionally, Mrs. Harrison's testimony was not so unduly prejudicial that it violated the Due Process Clause. *Cf. Payne*, 501 U.S. at 832 (O'Connor, J., concurring) (noting that victim impact testimony does not offend due process when it does not inflame the jury "more than . . . the facts of the crime").

## V.

Ivey next maintains that trial counsel were constitutionally deficient in several respects during the penalty phase of his trial. In order to establish that his constitutional right to the effective assistance of counsel was violated, Ivey must demonstrate that his attorneys' "representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Review of counsel's performance is "highly deferential." *Id.* at 689. And, competency is measured against what an objectively reasonable attorney would have done under the circumstances. *See id.* at 687-88. Counsel are afforded a strong presumption that their performance was within the broad range of professionally competent assistance. *See id.* at 689. In the context of a capital sentencing proceeding, the question with respect to prejudice is "whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695.

## A.

During the penalty phase, Ivey presented evidence from former teachers and counselors that he was an intelligent but quiet child who was apt to fall under the influence of others. Most notably, Ivey presented evidence of his relationship with Willie Smart, a childhood friend. This evidence—which included testimony from Smart himself

—tended to show that although Ivey had gotten in trouble with the law, he had been trying to straighten out his life when Smart got him involved in the crime (the murder of a young woman) for which he was incarcerated in Alabama prior to his escape. During closing argument, the State commented on this evidence:

> Has any psychiatrist or psychologist gotten up here and told you all under oath that his background caused some kind of mental condition that caused him to do something he didn't want to do?
>
> *MR. JOHNSON:*    Objection, your Honor. The defendant has no burden.
>
> *THE COURT:*    I give a lot of leeway to summations by both sides, but I will tell you, as I have always told you, the defendant doesn't have to prove anything in this case. Go ahead, Solicitor.
>
> CONT'D CLOSING STATEMENT BY MR. BAILEY
>
> Thomas Ivey did what he did, according to the testimony, of his own free will and accord because he wanted to do it. *There's no testimony to the contrary.* All of the good things that were told to you all by Mrs. Retzlaff, the school teacher, Lee Ashford and Derrick Boling and Johnathan Davis from Mt. Meggs' Center; the good impressions he gave . . . them, the opinions they formed of him, were all formed before he went on this crime spree that you all heard about over the last week. He fooled these people. Don't let him fool you.

J.A. 506 (internal quotation marks omitted) (emphasis added by PCR court).

   Ivey contends that the State's argument led the jury to believe "that Ivey carried the burden of providing such evidence as psychiatric experts in order for them to find that he suffered from a mental disability and was . . . therefore entitled to mercy." Br. of Appellant at 39. Ivey acknowledges that trial counsel objected to the statement

regarding the absence of psychiatric testimony and that the trial court gave an appropriate curative instruction. He argues, however, that counsel should have objected to the statement "There's no testimony to the contrary."

The state PCR court rejected this claim, first ruling that

> the comment "no testimony to the contrary" when read in context of the argument as a whole, was not intended to be a comment on Ivey's failure to testify, but rather was a comment on the evidence that was presented by the defense that showed he had the capacity to act on his own free will and accord.

J.A. 507. Based on this finding, the PCR court held that counsel were not ineffective for failing to object. Second, the court concluded that even if counsel's failure to object were constitutionally deficient, Ivey suffered no prejudice. The district court concluded that the decision of the PCR court neither contravened nor unreasonably applied *Strickland*.

The ruling of the district court was indisputably correct, and thus Ivey is not entitled to a certificate of appealability on this claim. First, the challenged comment was not improper, and thus trial counsel were not ineffective for failing to object.[10] It is true that comment by

---

[10]Although the PCR court did not rely on this as a basis for rejecting Ivey's claim, we note that one of Ivey's trial attorneys testified during the PCR hearing that, although he could not specifically recall why he did not object, his failure to do so likely stemmed from strategic considerations:

> But in all candor, . . . my strategy in closing arguments is [to] minimize objections . . . because I think the . . . jurors get turned off by it and it highlights it. And you usually want to object to something that's really hurting you. And when you do that you accentuate and exacerbate the problem.

> And so, I want you all to know that just strategy wise, I usually am very reluctant . . . to object during closing argument unless it's so [blatant] that it's obvious because . . . when I get

the prosecution on the defendant's failure to testify violates the Fifth Amendment. *See Griffin v. California*, 380 U.S. 609, 615 (1965). But, no constitutional violation occurs "when a prosecutor's comments are merely 'a fair response to a claim made by defendant or his counsel.'" *Howard v. Moore*, 131 F.3d 399, 421 (4th Cir. 1997) (en banc) (quoting *United States v. Robinson*, 485 U.S. 25, 32 (1988)). Here, the PCR court reasonably determined that the prosecutor's statement was simply a response to the evidence presented by Ivey during the penalty phase and hence was not improper. *Cf. United States v. Senn*, 129 F.3d 886, 894 (7th Cir. 1997) (holding that prosecutor's statement that defendants' case "is based upon no evidence, no testimony" was not improper because statement was "permissible comment on the reasonableness of theories and inferences urged by the defense" (internal quotation marks omitted)).

In any event, Ivey suffered no prejudice from counsel's failure to object. Even if the comment was improper, it did not "so infect[ ] the [proceeding] with unfairness as to make the resulting [sentence] a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Any possibility of undue prejudice was minimized by the instruction immediately before the challenged comment that Ivey bore no burden of proof and the instruction given during the jury charge that the jury should not draw any inference from Ivey's failure to testify. *Cf. Senn*, 129 F.3d at 894 (noting, in context of holding that Government's comments did not violate *Griffin*, that "[t]he judge instructed the jury during the prosecutor's closing argument that the defense had no burden of proof, and the judge gave the usual jury instructions at the end of the trial regarding the defendants' refusal to testify").

---

up and make my closing argument, I'm going to try to slip in as much as I can within the rules.

J.A. 482. "[R]efraining from objecting in order to avoid irritating the jury is a standard trial tactic." *Bennett v. Angelone*, 92 F.3d 1336, 1349 (4th Cir. 1996). Strategic decisions are entitled to great deference on habeas review. *See McCarver v. Lee*, 221 F.3d 583, 594 (4th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001).

B.

During the sentencing phase, defense counsel called correctional officer Audie Hudson, who testified that Ivey was not a behavioral problem and that, in Hudson's opinion, Ivey had adapted well to prison life. On cross-examination, the State elicited testimony from Hudson that inmates at Broad River Correctional Facility (where Ivey would be incarcerated if sentenced to life imprisonment) had access to a softball field, indoor and outdoor basketball courts, workout equipment, educational programs, paid employment opportunities, and television. Hudson also stated that the facility was air-conditioned; that inmates were provided with food, clothing, and personal hygiene items; and that the cells were a little smaller than a room at a hotel. Defense counsel did not object to any of this testimony.

During closing argument, the State relied on Hudson's testimony to argue that a life sentence would not be a hardship on Ivey:

> [L]et's look at life imprisonment as an alternative [to a death sentence] and decide whether that's an acceptable punishment, whether that's justice for the things this man has done. And you know Mr. Hudson who was a defense witness — I didn't call Mr. Hudson up; the defense did. . . . And he told you all about life in prison [at Broad River]. He told you all they've got two man cells there. They've got T.V., and they've got radio; they've got stereos; and they've got an exercise yard with a softball field; they've got a gym that's got free weights and a nautilus type machine[ ] in it; it's got indoor and outdoor basketball courts; the entire prison is air-conditioned; they get three hot meals a day free of charge; they're given all the clothing; they're given all the personal hygiene items; they're given dental care and medical care; and they've got to work, but they pay them for working. That's life in prison in South Carolina. And in the meantime, Tommy Harrison is in his grave. Now, is that justice?

J.A. 952-53.

Before the PCR court, Ivey claimed that defense counsel were constitutionally ineffective for failing to object to the portion of the

State's closing argument that referred to Hudson's testimony. The court rejected this claim, concluding first that the cross-examination of Hudson was proper because evidence regarding the circumstances of prison life is relevant in determining whether the defendant will adapt to such a life. Second, the PCR court concluded that the State's reference to Hudson's testimony was a fair comment on the evidence in the record, and thus that defense counsel were not ineffective for failing to object.

In his federal habeas petition, Ivey maintained that defense counsel were constitutionally deficient for failing to object to the cross-examination of Hudson and for failing to object to the State's reference to Hudson's testimony during closing argument. The district court determined that the claim regarding cross-examination of Hudson was defaulted and that both assertions were without merit. Because we conclude that the district court was indisputably correct in its procedural ruling regarding the first portion of the claim and was equally correct in concluding that the ruling of the PCR court on the second portion of the claim was entitled to deference under § 2254(d)(1), we deny a certificate of appealability.

1.

Ivey failed to raise the first portion of his claim regarding Hudson's testimony—that counsel were ineffective for failing to object to the State's cross-examination of Hudson—before the PCR court. Because Ivey did not fairly present this claim to the state court, he failed to satisfy the exhaustion requirement of 28 U.S.C.A. § 2254(c).[11] *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). However, if the claim is now procedurally barred under state law, this court will deem it exhausted. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996). But, because

[11]In his petition for certiorari from the denial of PCR, Ivey did argue to the South Carolina Supreme Court that trial counsel were ineffective for failing to object to the cross-examination of Hudson. This presentation of the claim was not sufficient to exhaust it, however. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989) (holding that raising claim for first time in procedural context where consideration of merits is discretionary does not satisfy federal exhaustion requirement).

"the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence," we will be precluded from considering the merits of the claim unless Ivey demonstrates cause and prejudice to excuse his default. *Gray*, 518 U.S. at 162.

South Carolina law severely limits successive PCR applications:

> All grounds for relief available to an applicant under this chapter must be raised in his original, supplemental or amended [PCR] application. Any ground . . . not so raised . . . may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted . . . in the original, supplemental or amended application.

S.C. Code Ann. § 17-27-90 (Law. Co-op. 1985). In accordance with this provision, the South Carolina Supreme Court is generally reluctant to consider successive PCR applications, and will do so only if it was not possible for the applicant to raise the issue in his first application. *See Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). The South Carolina Supreme Court has allowed successive PCR applications in only three circumstances: when the initial application was filed without the assistance of counsel, *see Case v. State*, 289 S.E.2d 413, 413-14 (S.C. 1982) (per curiam); when PCR counsel was the same as trial counsel, *see Carter v. State*, 362 S.E.2d 20, 21 (S.C. 1987); and when procedural irregularities were so egregious as to result in a denial of due process, *see Washington v. State*, 478 S.E.2d 833, 835 (S.C. 1996). The mere fact that PCR counsel was ineffective is not sufficient grounds for a successive PCR application. *See Aice*, 409 S.E.2d at 394.

Ivey argues that the procedural bar of § 17-27-90 does not apply here because lead PCR counsel was ineffective. As evidence for this assertion, Ivey notes that the lead PCR counsel was not qualified under S.C. Code Ann. § 17-27-160(B) (Law. Co-op. Supp. 2001), which was enacted for the purpose of "opting into" the more restrictive habeas procedures set forth in Chapter 154 of Title 28 of the United States Code, *see Tucker v. Catoe*, 221 F.3d 600, 603-04 (4th Cir.), *cert. denied*, 531 U.S. 1054 (2000). Ivey also points out that

lead counsel repeatedly referred to the victim by the wrong name during the PCR hearing and was subsequently disbarred for improper handling of office accounts, *see In re Banks*, 542 S.E.2d 721, 722-23 (S.C. 2001) (per curiam). Even if we were to agree with Ivey that lead counsel was ineffective, however, under *Aice* that fact alone would not be sufficient to allow the filing of a successive PCR application.[12] Accordingly, this claim is procedurally barred as a matter of South Carolina law and is thus defaulted.

Ivey maintains that PCR counsel's ineffectiveness constitutes cause for his procedural default. However, in order for ineffective assistance of counsel to constitute cause for a procedural default, the petitioner must first demonstrate a constitutional right to counsel in the proceeding at issue. *See Mackall v. Angelone*, 131 F.3d 442, 448 (4th Cir. 1997) (en banc). However, a state habeas petitioner does not possess a constitutional right to counsel. *See id.* at 447. Accordingly, Ivey has not demonstrated cause for his procedural default.

2.

The PCR court held that the State's argument regarding Hudson's testimony was "fair comment on the evidence," J.A. 512, and hence was not violative of the Due Process Clause; therefore, trial counsel were not ineffective for failing to object to this portion of the argument. The district court agreed and accordingly deferred to the state court ruling under § 2254(d)(1).

A prosecutor's improper closing argument may constitute a denial of due process if it renders the proceeding "fundamentally unfair." *Bennett v. Angelone*, 92 F.3d 1336, 1345 (4th Cir. 1996) (internal quotation marks omitted); *see Donnelly*, 416 U.S. at 643. In determining whether a defendant's due process rights were violated by a prosecutor's closing argument, we must first determine whether the remarks were, in fact, improper. *See United States v. Morsley*, 64 F.3d 907, 913 (4th Cir. 1995). If so, we then must decide whether the

---

[12]Ivey makes much of the fact that the South Carolina Supreme Court assigned a judge to handle Ivey's second PCR application, an action it took in response to Ivey's motion. We fail to see the significance of the action of the South Carolina Supreme Court.

improper remarks "so prejudiced the defendant's substantial rights that the defendant was denied a fair trial." *Id.* "This determination requires the court to look to the nature of the comments, the nature and quantum of the evidence before the jury, the arguments of opposing counsel, the judge's charge, and whether the errors were isolated or repeated." *Boyd v. French*, 147 F.3d 319, 329 (4th Cir. 1998) (internal quotation marks omitted).

Here, the remarks by the prosecutor were not improper because they were simply a fair comment on the evidence.[13] *See Bell v. Evatt*, 72 F.3d 421, 437 (4th Cir. 1995) (holding that remarks that "were consistent with the record and . . . rationally inferred from the . . . evidence" were not improper). Because the remarks were not improper, trial counsel could not be considered ineffective for failing to object.

## C.

During the penalty phase, the State presented testimony from Vincent Neumon, Ivey's accomplice, regarding the murder of Robert Montgomery. As is relevant here, Neumon testified that Ivey was the triggerman in Montgomery's murder. On cross-examination, defense counsel probed the extent of Neumon's involvement in Montgomery's murder and his guilty plea, suggesting that Neumon, not Ivey, was the triggerman.[14] Defense counsel also explored the fact that Neumon had agreed to plead guilty to Montgomery's murder in exchange for the dismissal of numerous charges, including the murder of Officer Harrison; defense counsel asserted through questioning that Neumon had changed his story regarding the Montgomery murder in exchange for the benefits of the plea agreement. In response to this questioning, Neumon stated that he had pleaded guilty to Montgomery's murder because he was an accomplice to that crime; Neumon

---

[13]Having defaulted his challenge to the admission of Hudson's testimony regarding prison conditions, Ivey cannot now complain that the State's comments were improper on the basis that the testimony to which the State referred was inadmissible.

[14]For example, defense counsel's first question on cross-examination was, "Mr. Vincent Neumon, you have admitted that you murdered Robert Montgomery; isn't that true?" J.A. 643.

also stated that his previous story to law enforcement officers had been a lie and that his trial testimony was truthful.

On redirect, the State elicited testimony from Neumon that no police officer had ever accused him of being the triggerman in Montgomery's murder; that Neumon's attorneys had advised him on "the law regarding accomplice liability," J.A. 651; and that he had testified truthfully. On recross-examination, defense counsel discussed the provision of Neumon's plea agreement that required him to tell the truth and obtained Neumon's acknowledgment that the solicitor would decide whether he had told the truth or not.

During closing argument, the State made the following statement concerning Neumon's guilty plea to the Montgomery murder:

> Vincent Neumon testified here under oath that he's pleading to the Montgomery murder under that hand of one, hand of all, under the advice of the two lawyers he had in court here with him. . . . That's what Neumon is doing. . . . And . . . the defense[ ] wants you to infer that maybe it was Neumon who did the shooting of Robert Montgomery; maybe it wasn't Ivey. Maybe it was Neumon since he's pleading guilty to murder. *There's no evidence anywhere in this record that Vincent Neumon shot Robert Montgomery.* He was part of the deal, part of the kidnapping, part of the robbery, right up there with [Ivey], but there's no evidence that he's the trigger man — no evidence. *There's no evidence in this record . . . that any law enforcement officer has ever accused Vincent Neumon of being the trigger man in this killing.*

*Id.* at 946-47 (emphasis added).

Ivey maintains that trial counsel were constitutionally ineffective for failing to object to (1) the question regarding whether any law enforcement officer had suggested that Neumon was the triggerman in the Montgomery murder, and (2) the statement in closing argument that no evidence supported the suggestion that Neumon was the triggerman in the Montgomery murder.[15] According to Ivey, both the

---

[15]In connection with this argument, Ivey asserts in passing that the prosecutor "insinuated himself onto this jury" through certain comments

questions and the closing argument constituted improper prosecutorial vouching for Neumon's credibility.

The district court first concluded that because Ivey had failed to present this claim to the state PCR court, it was defaulted. For the reasons set forth in Part V.B.1., we hold that this ruling was indisputably correct. Although this procedural ruling is a sufficient basis for the denial of a certificate of appealability, the district court also addressed the merits of the "vouching" claim and found them lacking, and thus determined that trial counsel were not ineffective for failing to object. This holding, too, is not subject to debate among reasonable jurists, and it provides an additional basis for the denial of a certificate of appealability.

The State may not vouch for or bolster the credibility of its own witness. *See United States v. Lewis*, 10 F.3d 1086, 1089 (4th Cir. 1993). "[T]he prosecutor may not, among other things, make explicit personal assurances that a witness is trustworthy or implicitly bolster the witness by indicating that information not presented to the jury supports the testimony." *Id.* Vouching "jeopardize[s] the defendant's right to be tried solely on the basis of the evidence presented to the jury" and "may induce the jury to trust the Government's judgment rather than its own view of the evidence" because "the prosecutor's opinion carries with it the imprimatur of the Government." *United States v. Young*, 470 U.S. 1, 18-19 (1985). As with other forms of prosecutorial misconduct, vouching violates due process if it renders a proceeding fundamentally unfair. *See United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir. 1997).

No improper vouching or bolstering occurred here, and therefore defense counsel were not ineffective for failing to object to the ques-

---

during closing argument. Br. of Appellant at 48. This argument, too, is defaulted by virtue of Ivey's failure to raise it before the state PCR court. In any event, Ivey provides no support for his assertion that the comments in question were improper. And, even if the comments were improper, our examination of the relevant factors persuades us that the comments did not render Ivey's sentencing so unfair as to deny him due process.

tions on redirect or the comments during closing argument. The State's question regarding whether Neumon had ever been accused of being the triggerman in Montgomery's murder was a fair response to defense counsel's repeated attempts to establish that Neumon was the triggerman. *See United States v. Garcia-Guizar*, 160 F.3d 511, 522 (9th Cir. 1998) (stating that when "the defendant opens the door to an argument, it is fair advocacy for the prosecution to enter" (internal quotation marks omitted)). The State's comment during closing argument that there was no evidence in the record that Neumon had ever been accused of being the triggerman in the Montgomery murder was also a fair response to the cross-examination of Neumon. Moreover, the comment did not in any way suggest that the State had personal knowledge not before the jury regarding Neumon's role in the Montgomery murder. *See id.* at 521 (holding that comment regarding absence of evidence to support defendant's claims did not imply that evidence outside record supported prosecution's case). And, even if the State's questions on redirect and comments during closing argument were improper, Ivey suffered no due process violation. In light of the submission to the jury of Ivey's detailed confession to the Montgomery murder, the prosecutor's comments did not render the sentencing proceeding fundamentally unfair.

## VI.

As noted above, Ivey failed to raise his claims regarding the cross-examination of Hudson and the alleged "vouching" for Neumon in his initial PCR application. While this action was pending in the district court, Ivey filed a successive PCR application in state court; he then moved for a stay of the federal proceedings. The district court denied this motion.

We conclude that the denial of the motion was not an abuse of discretion. *See Evans v. Smith*, 220 F.3d 306, 321-22 (4th Cir. 2000) (stating standard of review), *cert. denied*, 532 U.S. 925 (2001). Ivey contends that the stay should have been granted because there is a possibility that the state PCR court will review the claims on the merits. For the reasons previously mentioned, we think this possibility is extremely remote. However, even if the PCR court ultimately reviews the claims on the merits, the denial of the motion for stay would not be erroneous. The ruling of the district court that the claims were

without merit in no way precludes the state court from reaching a contrary conclusion and granting relief.

## VII.

For the reasons set forth above, we conclude that Ivey has failed to make a substantial showing of the denial of a constitutional right. Accordingly, we deny a certificate of appealability and dismiss the appeal.

*DISMISSED*